# EXHIBIT A

**EFiled:  Jan 18 2023 09:51AM EST**
**Transaction ID 68913051**
**Case No. N23C-01-065 AML CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **BRIGHT DATA, LTD.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. N23C-01-065 AML _____-CCLD |
| **META PLATFORMS, INC.,** and | : | **REDACTED** |
| **INSTAGRAM, LLC,** | : | **PUBLIC VERSION** |
| | : | **FILED: January 18, 2023** |
| | : | |
| Defendants. | : | |

## COMPLAINT

## NATURE OF THE ACTION

1.      This case presents a simple question:  Does the public have the right to access public data?

2.      The answer is so obvious, it is almost tautological.  But Meta – known to most as Facebook – says no, threatening to sue Bright Data for doing just that, and nothing more.  Because Meta does not have the right to block Bright Data from searching purely *public* information that Meta expressly says it does not own, Bright Data brings this declaratory judgment action.

3.      The internet is the largest public repository of information ever assembled.  It has changed our way of life.  There is hardly a person in America that does not use the Internet on a daily basis to obtain information of interest to them.  Just ask Siri.  Though theoretically accessible by anyone with internet access, much of the information online is unusable simply because of its sheer volume.  It is a problem of information overload.

4.      Google – the largest scraper on the planet – has helped solve part of that problem.  Its bots crawl millions of websites, including Meta's websites, collecting information about the contents of each. Take a look:



When users type in a search query, Google analyzes its vast databases and points users to the most relevant websites. Google has revolutionized the Internet.

5.      Bright Data – a leading web data company – is also revolutionizing the Internet, in much the same way as Google. It has developed best-in-class technologies to provide solutions and access to that public data. Bright Data is founded on the fundamental premise that making publicly available web data accessible is an essential benefit to all. It protects democracy, keeps people informed, and fosters competitive markets. Bright Data's services are used by over 10,000 customers worldwide, including Fortune 500 companies, academic institutions, and small businesses. All of these customers rely on Bright Data to retrieve and synthesize public Internet data.

6.      With over 3,300 granted patent claims, Bright Data has developed unrivaled technology to access the Internet. Using the largest proxy network in the world, Bright Data and its customers can search for relevant public data posted

anywhere on the Internet.  For example, customers can use Bright Data's network to gather real-time data to focus their marketing efforts, help identify influencers, and analyze other important trends.  Other customers can use Bright Data's network to obtain up-to-date information concerning product pricing or availability, helping to foster more competitive markets.  Still other customers use the Bright Data network to search social media for signs of hate, manipulation, and political deception in an attempt to anticipate trends that might escalate to domestic or global violence.

7.      Because many of Bright Data's customers have similar information needs, Bright Data also searches the Internet using its own proxy network, and compiles public information in useable format.  So – just like when a person types a question into Google, and Google provides the answer, rather than just directing the user to a website – Bright Data will provide the same types of information the user could obtain through its own industrious efforts.  In doing so, Bright Data *only* accesses purely public data.  It does not search for, compile, or sell data that is protected by a paywall, password, or login page.  Even so, vast amounts of useful public, non-proprietary information is available, and it is valuable to consumers and companies alike.

8.      Redacted

.[1]

9.      Home to the world's largest online social networks, Facebook and Instagram, Meta's platforms and websites are themselves a vast repository of public data.  Users post information publicly on Facebook or Instagram that can be accessed by anyone, including non-members.  As Mark Zuckerberg has said, "Our mission is to make the world more open and connected.  We do this by giving people the power to share whatever they want…."  And "by giving people the power to share, we're making the world more transparent."  "Some of the most basic information we suggest that people leave public" and "we're just going to keep on moving more and more in the direction" of openness.  Facebook tells its users that "public information" – "called your Public Profile" and information "you choose to share … with Public" – "can … show up on another search engine" and "can be seen by anyone," including "people off of Facebook."

10.     Meta's decision not to put all information behind a log-in screen was intentional.  It does not want to become the next MySpace.  As a network, its success – and its continued dominance as a social media platform – depends on having as

---

[1] <span style="border:1px solid;padding:2px;color:gray;">Redacted</span>

.

many users as possible visit and post information to the site.  Restricting the information users can post publicly reduces both the number of visitors to the site and the willingness of some users to post information, all of which reduces the size of the network and would place the network at risk of being supplanted by another network that does not restrict access to users' own information.

11.     Meta does not claim ownership over any of its users' data.  It claims no copyright or other proprietary interest in wholly-public information.  Indeed, Meta specifically disclaims ownership.  Meta's Facebook service, for example, tells users that they "retain ownership of the intellectual property rights" in any content they "create and share on Facebook."  Its Instagram service similarly states that Instagram does "not claim ownership of [its users'] content that [they] post on or through the Service."  Both platforms provide that it is entirely the user's decision what to post and to whom – that is, the user decides whether information is public or behind a password and accessible to members only.

12.     The decision not to seek proprietary rights in its users' information was also intentional – a choice made for both legal and economic reasons.  Economically, if Meta sought ownership of users' data, many users would likely refuse to post information to the site.  Legally, Meta seeks the protection of Section 230 of the Communications Decency Act, which protects it from liability for information users post to its platform.  Under the Act, "[n]o provider or user of an interactive computer

service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230. The insulation from liability is premised on the notion that the platform is not the author, owner, or publisher of the information that users post, but merely a host for it. For these and other reasons, the information that Meta makes available for the world to see on its websites is not Meta's information.

13. Despite the fact that Bright Data only accesses publicly available information, and the fact that Meta does not claim any ownership in such data, Meta sent a cease and desist email to Bright Data on November 29, 2022. That email purported to memorialize a call that Meta's Director of Privacy and Data Policy, Allison Hendrix, had requested a few hours earlier. During the call, Ms. Hendrix explained that Meta was fine with Bright Data searching other third party sites

Redacted

. In short, Meta made clear that it was seeking to wrest control over public data it does not own. She demanded that Bright Data "[r]emove and cease the selling of any user data obtained from Meta's family of apps," and "stop scraping and facilitating the scraping of Meta users' data" by Bright Data's own customers. Meta gave Bright Data "48 hours" to accede to its demands, and stated that "refusal to cooperate within the deadline provided may result in enforcement action."

14.    In asserting the power to stop Bright Data from searching for publicly available information, Meta pointed solely to the Facebook and Instagram Terms of Service.  But Bright Data has not agreed to those terms.  As Bright Data explained to Meta on December 5, 2022,

> "[I]n response to our request to identify contracts that incorporate the Meta terms of service, you directed us to "the accounts [Bright Data] created" on Facebook and Instagram, which you say provided Bright Data with access to Meta's "products and services."  Those accounts, of course, are not used in connection with, and are completely unrelated to, the activities you have complained about, and it was a surprise to us that you would be relying on them now.

> But because you have identified them as the source of your potential contract claims, we have exercised our right to terminate those accounts and are no longer a "user" of Meta's products and services and are not now subject to Meta's user terms.

> ***To be clear, as of now at least, you are on notice that Bright Data affirmatively rejects and has not consented to any agreement to your user terms in any context for any reason***.  Nor will there be any future contract – or "meeting of the minds" – between the parties relating to the activities at issue absent a written agreement physically hand-signed by both parties."

This lawsuit, thus, focuses on current and forward-looking activities, for which there is no, and can be no, contract claim.[2]

---

[2] During the November 29th call and her follow-up email, Ms. Hendrix's threats also "include[d] terminating [its] agreements with" Bright Data.  Of course, terminating the agreements Meta threatened to sue under would paradoxically moot any request for future injunctive relief because there would no longer be an operative contract to enforce.  But this nuance was lost on Meta, as its real purpose in making this threat was to exert business leverage.  Unwilling to be extorted in this way, as noted above, Bright Data terminated the contracts Meta identified as the basis for their complaints

15.    Bright Data does not use an Instagram or Facebook account to search for and use public data posted on those sites.  Because Bright Data only searches public information – and does not access or collect any private information on Facebook or Instagram, such as profile information that is only visible when signed in as a member – it is not required to, and has not, clicked "accept" or otherwise agreed to Meta's terms.  Put simply, Bright Data does not enter Meta's walled garden, nor does it seek entry.  It collects only what it can see from the outside.

16.    Nor has Meta offered any consideration to Bright Data in exchange for any acceptance to its terms.  Because Meta's users have made their information available publicly, the public – including Bright Data – has the right to search that data.  Meta cannot co-opt that data and convert it to its own personal property.  Nor does Meta have standing to sue on behalf of its users, even if they retained any property rights in information they chose to make publicly available.

17.    As such, Bright Data seeks declaratory relief under the Delaware Declaratory Judgment Act, 10 *Del. C.* §§ 6501, *et seq.*  As a result of Meta's demands, Bright Data's right to collect public information on Meta's sites is directly threatened, and Meta has created an actual, definite, and justiciable case and

---

before filing this suit.  This action, therefore, focuses solely on Bright Data's right to search and use public information posted on Meta's sites currently and in the future.

controversy.  Bright Data seeks a declaration that Bright Data and its users have every right to search and use wholly public information posted on Meta's websites.

18.     Such a declaration is also in the public interest.[3]  There is no reason to create different, more restrictive rules for virtual billboards – like Meta's – than for physical billboards that dot the nation's highways.  The rule is simple:  public means public.  If this Court were to set the precedent that public online data is not truly public and cannot be used by the public – or at least not by Internet companies who want to use it – many businesses and modern endeavors would grind to a halt.  There would be no Google; there would be no price comparison services; there would be no Artificial Intelligence (because there would be no data to train those systems on); and there would be no way to monitor and stop bad online actors who seek to perpetuate malevolent activities.  That is not the world we want to live in; and it is not the world this Court should endorse.

## THE PARTIES

19.     **Bright Data Ltd.** is an Israeli company with a principal place of business at 4 Hamahshev St., Netanya 4250714, Israel.  Customers throughout the United States contract directly with Bright Data Ltd. for services, including the

---

[3] Other jurisdictions have reached similar conclusions.  Indeed, on January 4, 2023, the European Union fined Meta $400 million for including unconscionable provisions in its User Terms that stripped away users' rights as a condition of using the platform. https://www.nytimes.com/2023/01/04/technology/meta-facebook-eu-gdpr.html.

9

ability to use Bright Data's proxy network to search the Internet (including on Meta websites) and access data that Bright Data has compiled from its own Internet searches.

20. Bright Data is a steward of the public information it gathers. It maintains a robust, rigorous, and unrivaled compliance system to ensure its network remains safe and the public information it and its customers search are put to approved uses, such as price comparisons, brand protection, business intelligence, and research. It does not use the data in ways that could be harmful or embarrassing to others, and it takes steps to ensure that its customers do not do so either.

21. Bright Data recognizes the value and utility of public data, and makes its network and services available for free to over 600 organizations, including NGOs, academic institutions, and public bodies, so that public online information can be used to social benefit. These customers use Bright Data's network to, for example, fight human trafficking and other violence, address climate change, narrow the digital divide, promote diversity, and bring transparency to social media algorithms. For example, the New York Times recently used public data that Bright Data collected from Twitter to analyze changes in Twitter's content moderation decisions.

22. **Meta Platforms, Inc.** is a publicly traded corporation organized and existing under the laws of the State of Delaware and is registered to do business in

the State of Delaware.  Meta's headquarters are at 1601 Willow Road, Menlo Park, California 94025.

23.    **Instagram, LLC** is a subsidiary of Meta Platforms, Inc. and is a Delaware limited liability company with its principal place of business in Menlo Park, California.

24.    Meta Platforms Inc. and Instagram, LLC are referred to collectively herein as "Meta."  Meta owns and operates the Facebook and Instagram websites.

## JURISDICTION

25.    This Court has jurisdiction over this declaratory judgment action pursuant to 10 *Del. C.* §§ 6501, *et seq.*  In addition, this is a commercial dispute, the value of which is in excess of $1,000,000.  Plaintiff has accordingly designated this matter for this Court's Complex Civil Litigation Division.

26.    This Court has personal jurisdiction over Defendants because they are incorporated in Delaware and have engaged in substantial business within this district.

## COUNT I

### DECLARATORY JUDGMENT THAT BRIGHT DATA IS NOT LEGALLY BARRED FROM SEARCHING AND USING PUBLIC INFORMATION POSTED ON FACEBOOK

27.    Bright Data incorporates each and every paragraph of this Complaint as if fully set forth herein.

28.     An actual controversy exists between Bright Data and Meta concerning Bright Data's legal right to search for and use public information that Meta's users post on the Facebook website.   Meta, through its demands and threats of "enforcement action", has directly threatened Bright Data's right to search and use public information on Facebook, and Bright Data has a real and reasonable apprehension that it will be subject to liability if it continues to search for and use such information.

29.     Meta does not own the information its users post on Facebook.  It is not protected by any claim of copyright, intellectual property, or other property interest possessed by Meta.

30.     The information that Meta's users post publicly is public information. Alternatively, Meta lacks standing to enforce any copyright, intellectual property, or property interest possessed by the Meta users who publicly post information to the Facebook website.

31.     Bright Data is not a party to any contract that prohibits Bright Data from searching and using public information posted on Facebook's website.  Bright Data has not agreed to, and is not subject to, Facebook's Terms.  It did not check a box or click a button indicating consent to the Terms.  It is not a party to any contract with Meta incorporating the Terms.  It does not log-in or create a Facebook account in order to collect public information on Facebook.

32.    Alternatively, any contract that purports to prohibit Bright Data from searching and using public information posted on Facebook's website is void for lack of consideration.  Meta does not own any legally protectable interest in the public data posted on the Internet, including information that Meta hosts.  Just like information that is posted on a public billboard or bulletin board is public information regardless of who owns the billboard or bulletin board, information posted publicly on the Internet is public information regardless of the company that hosts the information on its computer servers.

33.    There are no other grounds on which Meta can legally bar Bright Data from searching for and using public information posted on Facebook's website.

34.    Even if Meta would otherwise have the right to bar Bright Data from searching for and using public information posted on Facebook's website, Meta is barred under the doctrine of laches from enforcing those rights or obtaining an injunction against Bright Data to prevent Bright Data from searching for and using public information posted on Facebook's website.  Meta has known that Bright Data has searched for and used public information posted on Facebook's website, has not previously taken action to prevent such conduct, and has allowed, acquiesced, or expressly or impliedly consented to such activities.  Bright Data reasonably relied on Meta's lack of enforcement in continuing to build its business.  An injunction

barring Bright Data from continuing to engage in these activities would be prejudicial to Bright Data and not in the public interest.

35.     Even if Meta would otherwise have the right to bar Bright Data from searching for and using public information posted on Facebook's website, Meta is barred under the doctrine of unclean hands from enforcing those rights or obtaining an injunction to prevent Bright Data from searching for and using public information posted on Facebook's website. [Redacted]

It would be inequitable and unconscionable to allow Meta to block Bright Data from searching and using information publicly posted on Facebook while continuing to allow Meta to [Redacted] .

## COUNT II

### DECLARATORY JUDGMENT THAT BRIGHT DATA IS NOT LEGALLY BARRED FROM SEARCHING AND USING PUBLIC INFORMATION POSTED ON INSTAGRAM

36.     Bright Data incorporates each and every paragraph of this Complaint as if fully set forth herein.

37.     An actual controversy exists between Bright Data and Meta concerning Bright Data's legal right to search for and use public information that Meta's users

14

post on the Instagram website.  Meta, through its written demands and threats of "enforcement action" has directly threatened Bright Data's right to search and use public information on Instagram, and Bright Data has a real and reasonable apprehension that it will be subject to liability if it continues to search for and use such information.

39. Meta does not own the information its users post on Instagram.  It is not protected by any claim of copyright, intellectual property, or other property interest possessed by Meta.

39. The information that Meta's users post publicly is public information.  Alternatively, Meta lacks standing to enforce any copyright, intellectual property, or property interest possessed by the Meta users who publicly post information to the Instagram website.

40. Bright Data is not a party to any contract that prohibits Bright Data from searching and using public information posted on Instagram's website.  Bright Data has not agreed to, and is not subject to, Instagram's Terms.  It did not check a box or click a button indicating consent to the Terms.  It is not a party to any contract with Meta incorporating the Terms.  It does not log-in or create an Instagram account in order to collect public information on Instagram.

41. Alternatively, any contract that purports to prohibit Bright Data from searching and using public information posted on Instagram's website is void for

lack of consideration. Meta does not own any legally-protectable interest in the public data posted on the Internet, including information that Meta hosts. Just like information that is posted on a public billboard or bulletin board is public information regardless of who owns the billboard or bulletin board, information posted publicly on the Internet is public information regardless of the company that hosts the information on its computer servers.

42.     There are no other grounds on which Meta can legally bar Bright Data from searching for and using public information posted on Instagram's website.

43.     Even if Meta would otherwise have the right to bar Bright Data from searching for and using public information posted on Instagram's website, Meta is barred under the doctrine of latches from enforcing those rights or obtaining an injunction to prevent Bright Data from searching for and using public information posted on Instagram's website. Meta has known that Bright Data has searched for and used public information posted on Instagram's website, has not previously taken action to prevent such conduct, and has allowed, acquiesced, or expressly or impliedly consented to such activities. Bright Data reasonably relied on Meta's lack of enforcement in continuing to build its business. An injunction barring Bright Data from continuing to engage in these activities would be prejudicial to Bright Data and not in the public interest.

44.     Even if Meta would otherwise have the right to bar Bright Data from searching for and using public information posted on Instagram's website, Meta is barred under the doctrine of unclean hands from enforcing those rights or obtaining an injunction to prevent Bright Data from searching for and using public information posted on Instagram's website. <span style="color:#6a9fd4">Redacted</span>

It would be inequitable and unconscionable to allow Meta to block Bright Data from searching and using information publicly posted on Instagram while continuing to allow Meta to <span style="color:#6a9fd4">Redacted</span>

## COUNT III

### DECLARATORY JUDGMENT THAT BRIGHT DATA IS NOT OBLIGATED TO MONITOR AND BLOCK ITS CUSTOMERS FROM SEARCHING AND USING INFORMATION POSTED ON FACEBOOK

45.     Bright Data incorporates each and every paragraph of this Complaint as if fully set forth herein.

46.     An actual controversy exists between Bright Data and Meta concerning Bright Data's legal right to make its proxy network available to its customers for any lawful purpose, regardless of whether some customers may use the Bright Data network to search for and use information posted on Facebook.  Stated otherwise,

17

Bright Data has no legal obligation to prevent its customers from searching for and using public information posted on Facebook.  Meta, through its written demands and threats of "enforcement action" has directly threatened Bright Data's right to make its network available to its customers for this and other lawful purposes, and Bright Data has a real and reasonable apprehension that it will be subject to liability if it continues to access, search for, and use such information.

47.    Bright Data is not a party to any contract with Meta that would require Bright Data to prevent its customers from searching and using public information posted on Facebook.

48.    Bright Data is not legally responsible for preventing its customers from searching and using information publicly posted on Facebook.  Such customers are not an agent of Bright Data, are not acting under Bright Data's direction or control, and are not acting for the benefit of Bright Data.  Rather, Bright Data's service is simply a tool, like a computer, a browser, or an Internet Service Provider that its customers use.

49.    Bright Data is not aware of any customers that are parties to any contract that prohibits them from searching for or using information posted on Facebook's website.

50.    Any contract between Meta and any customer of Bright Data's service that purports to prevent such customer from accessing information posted on Facebook is void for lack of consideration.

51.    There are no other grounds on which Meta can impose on Bright Data the obligation to monitor and block users from searching for and using information posted on Facebook's website.

52.    Meta is barred under the doctrine of laches from obtaining an injunction imposing on Bright Data the obligation to monitor and block customers from searching for and using information posted on Facebook's website.

53.    Meta is barred under the doctrine of unclean hands from imposing on Bright Data the obligation to monitor and block customers from searching for and using information posted on Facebook's website.

54.    Any injunction seeking to impose the obligation on Bright Data to monitor and block customers from searching for and using information posted on Facebook's website would be prejudicial to Bright Data and contrary to the public interest.

## COUNT IV

### DECLARATORY JUDGMENT THAT BRIGHT DATA IS NOT OBLIGATED TO MONITOR AND BLOCK CUSTOMERS FROM SEARCHING AND USING INFORMATION POSTED ON INSTAGRAM

55.     Bright Data incorporates each and every paragraph of this Complaint as if fully set forth herein.

56.     An actual controversy exists between Bright Data and Meta concerning Bright Data's legal right to make its proxy network available to its customers for any lawful purpose, regardless of whether some customers may use the Bright Data network to search for and use information posted on Instagram.  Stated otherwise, Bright Data has no legal obligation to prevent its customers from searching for and using public information posted on Instagram.  Meta, through its written demands and threats of "enforcement action" has directly threatened Bright Data's right to make its network available to its customers for this and other lawful purposes, and Bright Data has a real and reasonable apprehension that it will be subject to liability if it continues to search for and use such information.

57.     Bright Data is not a party to any contract with Meta that would require Bright Data to prevent its customers from searching and using public information posted on Instagram.

58.     Bright Data is not legally responsible for preventing its customers from searching and using information publicly posted on Instagram.  Such customers are

not an agent of Bright Data, are not acting under Bright Data's direction or control, and are not acting for the benefit of Bright Data.  Rather, Bright Data's service is simply a tool, like a computer, a browser, or an Internet Service Provider that its customers use.

59.   Bright Data is not aware of any customers that are parties to any contract that prohibits them from searching for or using information posted on Instagram's website.

60.   Any contract between Meta and any customer of Bright Data's service that purports to prevent such customer from accessing information posted on Instagram is void for lack of consideration.

61.   There are no other grounds on which Meta can impose on Bright Data the obligation to monitor and block customers from searching for and using information posted on Instagram's website.

62.   Meta is barred under the doctrine of laches from imposing on Bright Data the obligation to monitor and block customers from searching for and using information posted on Instagram's website.

63.   Meta is barred under the doctrine of unclean hands from imposing on Bright Data the obligation to monitor and block customers from searching for and using information posted on Instagram's website.

64.     Any injunction seeking to impose the obligation on Bright Data to monitor and block customers from searching for and using information posted on Instagram's website would be prejudicial to Bright Data and contrary to the public interest.

## COUNT V

## PROMISSORY ESTOPPEL

65.     Bright Data incorporates each and every paragraph of this Complaint as if fully set forth herein.

66.     Meta made clear promises to the public that its users control who can access their information, including what information is publicly accessible.

67.     Meta's course of dealing towards Bright Data led Bright Data to believe that Meta would continue to allow Bright Data to access, use, and facilitate access to public data on Meta platforms.  Meta thus created an enforceable promise.  Meta was fully aware of Bright Data's activities for years   [Redacted]

. And Meta never once objected.  This course of conduct led Bright Data to believe that Meta had no complaints about Bright Data's activities.

68.     Bright Data reasonably relied on Meta's promises.   Bright Data expended significant time and resources to build data sets of public information on Meta's platforms, and to build patented tools its customers could use to utilize public

information on Meta's platforms.  Meta should reasonably have expected its actions

to induce detrimental reliance.

69.    Meta is therefore estopped, under the doctrine of promissory estoppel,

from preventing Bright Data or its customers from searching for or using public

information posted on Meta's websites.

## PETITION FOR RELIEF

70.    WHEREFORE, Plaintiff Bright Data prays for judgment against

Defendants as follows:

a.    A declaration issued pursuant to 10 *Del. C.* §§ 6501, *et seq.* that Bright
      Data is not legally barred from searching and using public information
      posted on Facebook.

b.    A declaration issued pursuant to 10 *Del. C.* §§ 6501, *et seq.* that Bright
      Data is not legally barred from searching and using public information
      posted on Instagram.

c.    A declaration issued pursuant to 10 *Del. C.* §§ 6501, *et seq.* that Bright
      Data is not obligated to monitor and block its customers from searching
      and using information posted on Facebook.

d.    A declaration issued pursuant to 10 *Del. C.* §§ 6501, *et seq.* that Bright
      Data is not obligated to monitor and block its customers from searching
      and using information posted on Instagram.

e.    A judgment that, under the doctrine of promissory estoppel, Bright Data
      has the right to search for and use, and to allow its customers to search
      for and use, information publicly posted on Meta websites.

Dated:  January 6, 2023

Respectfully submitted,

/s/ David E. Wilks
David E. Wilks (Del. Bar # 2793)
WILKS LAW LLC
4250 Lancaster Pike Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Email: dwilks@wilks.law

Colin R. Kass*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

David A. Munkittrick*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
dmunkittrick@proskauer.com

*Attorneys for Bright Data, Ltd.*

*\*pro hac vice motion forthcoming*

24

# EXHIBIT B

**SUPERIOR COURT**
**CIVIL CASE INFORMATION STATEMENT (CIS)**

EFiled: Jan 03 2023 04:51PM EST
Transaction ID 68891826
Case No. N23C-01-065 AML CCLD

COUNTY: [ N ]   K   S          CIVIL ACTION NUMBER: _____

| | |
|---|---|
| Caption: <br><br> BRIGHT DATA, LTD., <br><br>         PLAINTIFF <br><br>      v. <br><br> META PLATFORMS, INC., <br><br> INSTAGRAM, LLC, <br><br>         DEFENDANTS. | Civil Case Code: __CCLD__ <br><br> Civil Case Type: Complex Commercial Litigation Division <br> (SEE REVERSE SIDE FOR CODE AND TYPE) <br><br> MANDATORY NON-BINDING ARBITRATION (MNA) _____ <br><br> Name and Status of Party filing document: <br><br> Bright Data, Ltd. - Plaintiff <br><br> Document Type: (E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM) <br><br> Complaint <br><br> JURY DEMAND: YES ____ No ✓ |

| | |
|---|---|
| ATTORNEY NAME(S): <br><br> David E. Wilks <br> ATTORNEY ID(S): <br><br> DE Bar No. 2793 <br> FIRM NAME: <br><br> Wilks Law, LLC <br> ADDRESS: <br><br> 4250 Lancaster Pike, Suite 200 <br><br> Wilmington, DE 19805 <br> TELEPHONE NUMBER: <br><br> (302) 225-0850 <br> FAX NUMBER: <br><br> (302) 225-0851 <br> E-MAIL ADDRESS: <br><br> dwilks@wilks.law | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT OR ANY RELATED CASES THAT HAVE BEEN CLOSED IN THIS COURT WITHIN THE LAST TWO YEARS BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS: <br><br> _____ <br><br> _____ <br><br> EXPLAIN THE RELATIONSHIP(S): <br><br> _____ <br><br> _____ <br><br> _____ <br><br> _____ <br><br> OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: <br><br> _____ <br><br> _____ <br><br> (IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

Revised 8/18

# EXHIBIT C

**EFiled: Jan 13 2023 04:51PM EST**
**Transaction ID 68891826**
**Case No. N23C-01-065 AML CCLD**

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| **BRIGHT DATA, LTD.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | N22C-01-065 AML |
| | : | C.A. No. _____ -CCLD |
| **META PLATFORMS, INC.,** and | : | |
| **INSTAGRAM, LLC,** | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION FOR LEAVE**
**TO FILE COMPLAINT UNDER SEAL**

Plaintiff Bright Data, Ltd., ("Plaintiff"), by and through its undersigned counsel, hereby moves the Court, pursuant to Delaware Superior Court Rule 5(g), for an order authorizing Plaintiff to file the enclosed Complaint under seal (the "Filing"). In support of this motion, Plaintiff states as follows:

1.   Plaintiff's Filing contains confidential and sensitive business information, the disclosure of which may cause harm to certain parties or non-parties to this litigation. Specifically, the filing contains sensitive information subject to contractual confidentiality provisions.

Colleen Redmond
Prothonotary
BY
FILED:
TIME 2:55p
DATE 1/26/23

JAN 13 2023 AM11:09
Filed NCC Prothonotary

2.     That information is so sensitive and valuable to the parties that, in the event that the Court were to deny this motion, Plaintiff respectfully requests that the Prothonotary take no action to file the Complaint on the Court's public docket.

3.     Superior Court Rule 5(g)(2) provides that "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal…." Super. Ct. R. 5(g)(2).

4.     The enclosed proposed form of order contemplates that, pursuant to Superior Court Rule 5(g)(2), Plaintiff will file a redacted public version of the Filing within 30 days.  The enclosed proposed order also provides that the Complaint be deemed filed on January 6, 2023.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order in the form attached hereto.

Dated:  January 6, 2023          WILKS LAW, LLC

                                 */s/ David E. Wilks*
                                 David E. Wilks (DE Bar No. 2793)
                                 4250 Lancaster Pike, Suite 200
                                 Wilmington, DE 19805
                                 Telephone: (302) 225-0850
                                 Email: dwilks@wilks.law


                                 *Attorneys for Plaintiff*

2

EFiled:  Jan 13 2023 04:51PM EST
Transaction ID 68891826
Case No. N23C-01-065 AML CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| BRIGHT DATA, LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. _____ - CCLD |
| META PLATFORMS, INC., | : | |
| INSTAGRAM, LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

### PRAECIPE

TO:   Prothonotary's Office
      New Castle County Courthouse
      Superior Court of Delaware
      Leonard L. Williams Justice Center
      500 North King Street
      Wilmington, DE 19801

PLEASE ISSUE a summons and a copy of the Complaint to the Sherriff's Office of New Castle County, commanding plaintiff's counsel to summon and direct the below named Defendant to answer the Complaint by serving the below named Defendant with the Summons and a copy of the Complaint, in accordance with 6 Del. C. § 18-105 at the following address:

Instagram LLC,
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808


WILKS LAW, LLC

*/s/ David E. Wilks*
David E. Wilks (DE Bar No. 2793)
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Email: dwilks@wilks.law

*Attorney for Plaintiff*

Dated: January 6, 2023

EFiled:  Jan 13 2023 04:51PM EST
Transaction ID 68891826
Case No. N23C-01-065 AML CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
|  | : |  |
| BRIGHT DATA, LTD., | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | C.A. No. _____ - CCLD |
|  | : |  |
| META PLATFORMS, INC., | : |  |
| INSTAGRAM, LLC, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

### PRAECIPE

TO:   Prothonotary's Office
      New Castle County Courthouse
      Superior Court of Delaware
      Leonard L. Williams Justice Center
      500 North King Street
      Wilmington, DE 19801

PLEASE ISSUE a summons and a copy of the Complaint to the Sherriff's Office of New Castle County, commanding plaintiff's counsel to summon and direct the below named Defendant to answer the Complaint by serving the below named Defendant with the Summons and a copy of the Complaint, in accordance with 8 *Del. C.* § 321, at the following address:

Meta Platforms, Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808


WILKS LAW, LLC

*/s/ David E. Wilks*
David E. Wilks (DE Bar No. 2793)
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Email: dwilks@wilks.law

*Attorney for Plaintiff*

Dated: January 6, 2023

EFiled:  Jan 13 2023 04:51PM EST
Transaction ID 68891826
Case No. N23C-01-065 AML CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

|  |  |  |
|---|---|---|
| **BRIGHT DATA, LTD.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. _____ - CCLD |
| **META PLATFORMS, INC.,** and | : | |
| **INSTAGRAM, LLC,** | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**<u>SUMMONS</u>**

**TO THE STATE OF DELAWARE,**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

1.     To summon the below-named Defendant so that, within twenty (20)

days after service hereof upon Defendant, exclusive of the day of service, Defendant

shall serve upon David E. Wilks, Plaintiff's attorney, whose address is c/o Wilks

Law, LLC, 4250 Lancaster Pike, Suite 200 Wilmington, Delaware 19805, an answer

to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of

Defense).

2.     To serve upon Defendant a copy hereof and of the Complaint (and of

the Affidavit of Demand if any has been filed by Plaintiff).

Dated: January _____, 2023         <u>COLLEEN REDMOND</u>
                                                   Prothonotary

                                                 _____

                                                 Per Deputy

**Instagram, LLC**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

TO THE ABOVE-NAMED DEFENDANT:

      In case of your failure, within twenty (20) days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the Affidavit of Demand, if any).

                                               <u>COLLEEN REDMOND</u>
                                                   Prothonotary

                                                 _____

                                                 Per Deputy

EFiled:  Jan 13 2023 04:51PM EST
Transaction ID 68891826
Case No. N23C-01-065 AML CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

|  | : |  |
|---|---|---|
| **BRIGHT DATA, LTD.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. _____ - CCLD |
| **META PLATFORMS, INC.,** and | : | |
| **INSTAGRAM, LLC,** | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## <u>SUMMONS</u>

**TO THE STATE OF DELAWARE,
TO THE SHERIFF OF NEW CASTLE COUNTY:
YOU ARE COMMANDED:**

1.     To summon the below-named Defendant so that, within twenty (20) days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon David E. Wilks, Plaintiff's attorney, whose address is c/o Wilks Law, LLC, 4250 Lancaster Pike, Suite 200 Wilmington, Delaware 19805, an answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense).

2.     To serve upon Defendant a copy hereof and of the Complaint (and of the Affidavit of Demand if any has been filed by Plaintiff).

Dated: January _____, 2023            COLLEEN REDMOND_____
                                        Prothonotary

                                        _____
                                        Per Deputy

**Meta Platforms, Inc.**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

TO THE ABOVE-NAMED DEFENDANT:

        In case of your failure, within twenty (20) days after service hereof upon you,

exclusive of the day of service, to serve on Plaintiff's attorney named above an

answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit

of Defense), judgment by default will be rendered against you for the relief

demanded in the Complaint (or in the Affidavit of Demand, if any).

                                        COLLEEN REDMOND_____
                                        Prothonotary

                                        _____
                                        Per Deputy

2

**EFiled: Jan 20 2023 08:50AM EST**
**Transaction ID 68930764**
**Case No. N23C-01-065 AML CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| BRIGHT DATA, LTD., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. N23C-01-065 AML-CCLD |
| | : | |
| | : | |
| META PLATFORMS, INC., | : | |
| INSTAGRAM, LLC, | : | |
| Defendants. | : | |
| | : | |

## ENTRY OF APPEARANCE

PLEASE TAKE NOTICE that D. Charles Vavala, III of Wilks Law, LLC hereby enters his appearance as counsel in the above-captioned action on behalf of plaintiff Bright Data, Ltd.

Dated: January 20, 2023

WILKS LAW, LLC

_/s/  D. Charles Vavala, III_
David E. Wilks (Bar No. 2793)
D. Charles Vavala, III (Bar No. 6098)
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Telephone: (302) 225-0850
Email: dwilks@wilks.law
Email: cvavala@wilks.law

*Attorneys for Plaintiff*